*985 OPINION.
GReen :
The respondent treated the sale or exchange of the Garfield stock for $500,000 and the 200 certificates and the subsequent sale of the 200 certificates for $2,500,000 as if both were one single transaction. He determined that the taxable income should be ascertained by applying the consideration from the first and second transactions to the cost of the Garfield stock wliich was sold or exchanged in the first transaction. This application was made on the “ return of capital ” theory,- which contemplates the receipt by the taxpayer of his entire cost before there can be taxable income. All receipts after the cost was returned are regarded as income. The petitioners contend that the first of the transactions is complete in itself and that the income ther.efrom should be determined in accordance with the provi* *986 sions of section 202 (b) of the Revenue Act of 1918, the applicable part of which reads as follows:
When property is exchanged for other property, the property received in exchange shall for the purpose of determining gain or loss be treated as the equivalent of cash to the amount of its fair market value, if any;
We think that the petitioners’ contention is correct. There were two transactions, each separate and distinct from the other and each giving rise to income. When, in 1918, the petitioners sold or exchanged their Garfield stock for $500,000 in cash and the 200 certificates, they received cash and property having a fair market value and derived income therefrom, the amount of which is immaterial here since the year 1918 is not before us. They derived no income from that transaction in the subsequent years.
In the second transaction, also in 1918, they sold the 200 certificates received by them in the first transaction. The sales price was '$2,500,000, payable, however, at the rate of $500,000 or more per year without interest. Again we have a transaction which results in gain or loss. The petitioners never have sought to pay tax on this on the installment theory. The tax thereon must be computed on the gain derived therefrom in the year 1918. The first essential element of the computation is the value of the certificates sold. There can be no better evidence of their value than their sales price on the day they were received. This sales price was $2,500,000 to be paid at the rate of $500,000 or more per year without interest. Quite obviously this price was not the equivalent of $2,500,000 in cash. It must be discounted to its present worth. In any event the certificates were sold for their value, and no income resulted from this transaction. The evidence of the petitioners’ witness was to the effect that these certificates were worth $2,500,000 but their sale for that amount to be paid in annual installments of $500,000 or more over a period of five years seems to us to establish conclusively that the then fair market value was not equal to $2,500,000 in cash. The sales price and consequently the value of the certificates was the value on the date of the sale for $2,500,000 payable over the five year period.
The situation here is quite analogous to the situation in the case of Francis S. Kosmerl v. Commissioner, 25 Fed. (2d) 87. There the Circuit Court of Appeals for the Seventh Circuit, in affirming Ruth Iron Co. v. Commissioner, 4 B. T. A. 1151, said:
And so with respect to the notes themselves, which by their terms, matured up to 40 years from their date, without interest. That the notes were good is quite beyond dispute — good, however, only for their face value at maturity, but surely not good for their face value when made. That a note, however absolutely good the security, due J¡0 years from its date, without interest, is not *987 icorth its face at time of making, is apparent from the mere statement. And so with the notes in question, paid in 1921 and 1922, eifjht and nine years from their date. Conceding these notes to have been capital assets of the taxpayer on their date, they were capital assets not for their face value but for the materially less amount which the notes were then actually worth; and in their payment at maturity there was plainly gain, profit or income to the extent of the difference. (Italics supplied.)
The value of the right to receive the $2,500,000 in accordance with the terms of the contract can not be determined from the record and the respondent has made no determination with reference thereto. The purchase price was paid as follows:
1919- $378, 932.11
1920- 726,483.05
1921- 280,446.17
1922- 638, 515. 23
1923- 475, 623.44
Total- 2,.500, 000. 00
As these payments were made the petitioners derived income to the extent that each exceeded its proportionate part of the value of the $2,500,000 payable over the period. This value must be determined either by agreement or by the Board upon evidence. If the parties can not agree, evidence will be taken and the value determined therefrom.
The petitioners herein reported their income upon the “ return of capital ” theory now contended for by the respondent, and for this reason the respondent urges that they should not be permitted to depart from that theory to the end that a part of the income received by them in 1918 escape taxation. If the certificates received on the sale or exchange had a fair market value at the time of their receipt— and we hold that they did in an amount equal to the present'worth of the right to receive $2,500,000 over the period of five years in accordance with the terms of the contract — then there is no justification for the application of such a theory. Other than the excess of the payments over the present worth of the $2,500,000, all income from both transactions was derived in 1918, a year not before us, and can be subjected to tax in no other year.
Assuming that the parties might agree that a discount of 5 per cent with a provision for payments into a sinking-fund at 4 per cent compounded annually represented under the circumstances a reasonable discount, the total discount would amount to $368,960 which would be returned as income by the petitioners and Louisa Moore (the reason for including Louisa Moore will appear later in the opinion), in the following years:
*988 [[Image here]]
The respondent in bis brief contends that:
The only possible ground on which the petitioners can rely to establish the stock sale transaction as closed on December 14, 1918, is to show that the remainder of the consideration over and above cash, which was in the form of oil and gas income certificates, called for 20 per cent of the gross income to Exchange from the operation of the Garfield leases was liquidated as of December 14,1918, under the option contract with Sinclair.
He then continues his argument to the effect that the so-called “ option agreement ” was an option rather than a sale, and that under the most favorable interpretation possible it would appear to be only “ a contract to sell, in the future and not a contract of sale on which a closed transaction can be predicated.”
We regard the contract with the Exchange Oil Co. and the contract with the Sinclair Oil & Gas Co. as two separate transactions. As previously expressed, it is our opinion that the first contract was a completed sale coming squarely within the provisions of section 202 (b), supra. The certificates, in our opinion, clearly had a fair market value which value should, according to the statute, be treated as the equivalent of cash. But even under the respondent’s theory we can see no semblance of an option in the second agreement. The Sinclair Co. had no election in the matter. Under paragraph III of the contract it was bound to pay on December 14,1923,, any portion of the full $2,500,000 purchase price which had not been received by the petitioners up to that time. In onr opinion the second agreement was a sale and not an option. We also regard it as immaterial that 100 per cent of the stock-of the Exchange Oil Co. was owned by the Sinclair Oil & Gas Co.
Since we are not accepting the value put on the certificates by the petitioners with the result that the petitioners will have a certain amount of income for the years 1919 to 1923, inclusive, it becomes necessary to decide their two so-called alternative contentions.
Eegarding the depletion question, we fail to see where the petitioners retained any depletable interest in the oil leases after they were turned in to the Garfield Oil Co. for stock in 1916. In our opinion it is not necessary to cite authorities for the proposition that corporations and individuals are separate entities. After the leases became the property of the Garfield Oil Co., the petitioners *989 lost all right to depletion therein. We sustain the respondent’s determination on this point.
The last alternative is whether the respondent erred in not finding that one-half of the income resulting from the sale of the Garfield stock apportioned to M. C. Garber, B. A. Garber and L. 0. Moore belonged in fact and in law to their respective wives.
In the cases of M. C. Garber and B. A. Garber we are not satisfied from the evidence that the respondent erred in determining that the wives did not own any of the Garfield Oil Co. stock which was sold on December 14, 1918. Lucy M. and Vida R. Garber were never stockholders of record in the Garfield Oil Co. They were never owners of record of the Garber leases that were transferred to and became the assets of the Garfield Oil Co. They were not signatories to either of the contracts of December 14, 1918. In the case of M. C. Garber the evidence is not' clear out of what funds or as to how he acquired his interest in the Garber leases. After the sale had been made and after consulting an accountant, both parties decided to assign one-half of the oil and gas certificates to their Wives, which was done on July 14, 1919. We believe the situation is analogous to the situation in the cases of Appeal of Ormsby McKnight Mitchel, 1 B. T. A. 143, Mitchell v. Bowers, 9 Fed. (2d) 414, and Erwin Edmund Richter v. Commissioner, 10 B. T. A. 1317, and therefore affirm the respondent’s determination on this point.
The case of L. C. Moore, however, is different. In his case he actually gave one-half of his stock in the Garfield Oil. Co. to his wife in 1916. The gift was not made a matter of record but we have the testimony of a third party to the effect that Mr. Moore had prior to December 14, 1918, frequently referred to his stockholdings in the Garfield Oil Co. as being owned one-half by his wife. On these premises we conclude that L. C; Moore should be taxed only on the income received from the sale of 20 shares of Garfield Oil Co. stock instead of 40 shares as determined by the respondent. -

Judgment will be entered on 15 clays’ notice, under Rule 50.